1  Brian D. Kaider
2  KaiderLaw®
   24230 Kings Valley Road
3  Damascus, MD 20872-2221
   (240) 308-8032
4  bkaider@kaiderlaw.com
   Counsel for Ryan McCann, Plaintiff
5  PRO HAC VICE PENDING

6
   Deborah Kravitz
7  KamberLaw LLP
   401 Center Street, Suite 111
8  Healdsburg, CA 95448
   (707) 820-4247
9  dkravitz@kamberlaw.com
   Cal. Bar No. 275661
10 Counsel for Ryan McCann, Plaintiff

11
                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13

14 RYAN MCCANN,                              Case No.: _____

15              Plaintiff,

16 vs.                                       COMPLAINT FOR COPYRIGHT
17                                           INFRINGEMENT

18 TREASURY WINE ESTATES AMERICAS
   COMPANY; TREASURY WINE ESTATES
19 HOLDINGS, INC.; DAOU VINEYARDS,           DEMAND FOR JURY TRIAL
   LLC; AND JOHN DOE
20
              Defendants
21

22         Plaintiff, Ryan McCann, by and through undersigned counsel, asserts claims

23 against Defendants; Treasury Wine Estates Americas Company; Treasury Wine Estates

24 Holdings, Inc.; DAOU Vineyards; and John Doe for copyright infringement and seeks permanent

25 injunction, damages, statutory damages, costs, and attorneys' fees, and such other relief as this

26 Court deems just and proper.

27

28
   COMPLAINT FOR COPYRIGHT INFRINGEMENT - 1

**THE PARTIES**

1. Plaintiff, Ryan McCann is a natural person residing in Los Angeles, California.

2. Defendant, Treasury Wine Estates Americas Company is a Delaware stock corporation with a principal place of business at 555 Gateway Drive, P.O. Box 4500, Napa, California 944558.

3. Defendant, Treasury Wine Estates Holdings, Inc. is a Delaware stock corporation with a principal place of business at 555 Gateway Drive, P.O. Box 4500, Napa, California 944558.

4. Defendant, DAOU Vineyards, LLC ("DAOU Vineyards") is a California limited liability company with a principal place of business at 2777 Hidden Mountain Rod, Paso Robles, California, 93446.

5. Defendant, John Doe is, upon information and belief, a commercial entity (form unknown) that is a marketing, advertising, and/or graphic design firm.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction over federal Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 17 U.S.C. §§501-505.

7. This Court has general personal jurisdiction over the Defendants as they are each incorporated in and/or have a principal place of business in California.

8. Venue is proper in this Court under 28 U.S.C. 1391(b), because the facts giving rise to the acts or omissions alleged herein took place at least in part in this District and/or because Defendants Treasury Wine Estates Americas Company and Treasury Wine Estates Holdings, Inc. reside in this District and all defendants are residents of California.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 2

## DIVISIONAL ASSIGNMENT

9. Pursuant to General Order No. 44, as this case arises under the Copyright Act, case assignment is made without regard for division. To the extent that identification of division is necessary: as Defendants Treasury Wine Estates Americas Company and Treasury Wine Estates Holdings, Inc. reside in Napa County, this case should be assigned to either the San Francisco or Oakland division of this Court.

## FACTUAL ALLEGATIONS

10. Plaintiff, Ryan McCann is an artist based in Los Angeles, California whose work has been featured in exhibitions around the world.

11. Plaintiff has a personal relationship with Mr. George Daou, cofounder and proprietor of Defendant DAOU Vineyards.

12. On or about October 29, 2013, Plaintiff was asked by Mr. Daou to create a work of art to be used on the label of a prospective DAOU Vineyards' wine to be called "Pessimist."

13. After providing an initial draft of the artwork, Plaintiff and Mr. Daou had several communications during which minor modifications of the draft were discussed and ultimately the artwork was finalized and incorporated into DAOU Vineyard's label for its "Pessimist" wine.

14. Plaintiff and Mr. Daou did not enter into any written agreement regarding the creation of the Pessimist artwork or ownership of the copyright to the work.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 3

15. On or about May 16, 2017, Plaintiff filed an application for registration of the copyright to his work, which he entitled "A Pessimist is Never Disappointed," (hereinafter referred to as "the Work").

16. A Certificate of Registration for the Work was issued by the Copyright Office with an effective date of May 16, 2017; Registration Number VA 2-071-409 (Exhibit 1).

17. On July 27, 2017, Plaintiff informed Mr. Daou by email of the application for copyright registration and Mr. Daou responded, "We need to be owner of the copyright."

18. Upon information and belief, this exchange on July 27, 2017, more than three years after the Work was created, was the first discussion between Plaintiff and Mr. Daou of copyright ownership.

19. Between July 27, 2017 and October 24, 2017, Plaintiff and Mr. Daou had several email communications in which Mr. Daou desired for Plaintiff to create a physical painting of the Work along with approximately 100 lithographs of the new painting.

20. On October 24, 2017, Plaintiff informed Mr. Daou that the copyright registration for the Work had arrived in the mail and he provided a copy as an attachment.

21. A short time later, Mr. Neil Cassidy, Chief Financial Officer and Chief Operating Officer of Defendant, DAOU Vineyards, sent Plaintiff an email with a copyright assignment form for the Work and requesting Plaintiff's signature.

22. On October 27, 2017, Plaintiff sent Mr. Cassidy, Mr. Daou, and Ms. April Coviello, all of Defendant, DAOU Vineyards, an email outlining a set of terms that would govern the assignment of the Work to DAOU Vineyards.

23. Among the terms in Plaintiff's October 27, 2017 email were that Plaintiff would create a new, physical painting of the Work for a fee of $10,000; that DAOU Vineyards could create 100 prints or lithographs of the new painting with no commission to Plaintiff; that any reproductions of the new painting after the initial 100 would require a 50/50 split of profits between DAOU Vineyards and Plaintiff, to be paid quarterly in perpetuity, that Plaintiff would assign the copyright to the Work to DAOU Vineyards with no additional licensing fees for use of the image for "bottle labels or product marketing."

24. In a series of email communications on October 27, 2017, it became clear that the parties were not in agreement on the terms for assignment of the copyright to the Work.

25. Although the terms set forth in the October 27, 2017 email were labeled as an "assignment" of the copyright, they were legally terms of a license, as it was clear that Plaintiff intended to reserve certain rights to the Work, including the right to future royalties for sales of reprints.

26. The fact that the October 27, 2017 terms were intended as a license is confirmed by an email dated November 15, 2017, in which Plaintiff reiterated his willingness to operate under the proposed terms, but offered an alternative option for DAOU Vineyards to "purchas[e] the copyright outright." No terms for such a purchase were disclosed in the email.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 5

27. Plaintiff and Defendant, DAOU Vineyards never executed a license or assignment agreement for the Work.

28. On August 28, 2019, Mr. Daou sent an email to members of his staff and, copying Plaintiff, once again raising the desire for Plaintiff to create a physical painting and signed lithographs of the Work.

29. Plaintiff and Defendant, DAOU Vineyards never agreed upon terms for the creation of a physical painting and/or lithographs of the Work and they were never created.

30. On December 12, 2022, Mr. Cassidy contacted Plaintiff by email, stating that he assumed an assignment of the copyright to the Work had been executed in 2017 or 2018, and requesting a copy of the signed document. No assignment had ever been executed.

31. After several email exchanges in December 2022 and January 2023, Plaintiff and Defendant, DAOU Vineyards were unable to agree upon terms for the assignment of the copyright to the Work.

32. On January 13, 2023, Mr. Cassidy proposed instead of an assignment, that Plaintiff grant DAOU Vineyards a "perpetual copyright license" to the Work.

33. Again, no assignment or license document was signed between Plaintiff and Defendant, DAOU Vineyards.

34. On or about October 31, 2023, Defendant, DAOU Vineyards was acquired by Defendant, Treasury Wine Estates for $900 million, plus up to $100 million in additional performance-based incentives.

35. On August 15, 2024, Mr. Cassidy emailed Plaintiff again, requesting signature on a copyright assignment agreement for the Work.

36. On or about August 20, 2024, Plaintiff learned that Defendants had created one or more Derivative Works based on the Work.  These Derivative Works appeared on both the website; www.pessimistwine.com, and DAOU Vineyards' sponsored advertisements on Facebook (Exhibits 2[1] and 3[2], respectively).

37. The Derivative Works included clearly recognized elements from the Work, including, but not limited to, the tree, the birds, the moon, and the figure sitting beneath the tree.

38. Plaintiff never authorized Defendants to create the Derivative Works.

39. On August 30, 2024, undersigned counsel for Plaintiff sent a letter by certified mail to Mr. Neil Cassidy, CFO and COO of Defendant DAOU Vineyards, LLC and to Ms. Sarah Turner, CLO of Treasury Wine Estates.  This letter identified the Derivative Works, explained that they were unauthorized, and demanded that Defendants immediately cease and desist from all further use of the Derivative Works unless and until a licensing or assignment agreement could be negotiated between the Parties.  The letter further explained that as all implied licenses are non-exclusive, they may not be transferred to another entity without the express permission of the licensor and that such consent was neither requested of, nor

---

[1] Exhibit 2 is a screenshot of the website www.pessimistwine.com taken by undersigned counsel on August 21, 2024 at 11:26 AM EST.
[2] Exhibit 3 is a screenshot of a DAOU Vineyards sponsored Facebook ad that appeared in undersigned counsel's personal Facebook feed on August 22, 2024 at 4:23 PM EST.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 7

given by, Plaintiff to transfer the implied license to the Treasury Wine Estates Defendants.

40. On September 27, 2024, Mark Finkelstein, Esq. of Umberg Zipser LLP, as counsel for Defendant, Treasury Wine Estates, sent a letter to undersigned counsel, arguing that the Derivative Works were not, in fact, derived from the Work and/or that they were authorized by "the broad license granted to DAOU in 2017;" and further, that the license included the right to assign.

41. As noted above, the Parties discussed a license in 2017, but no agreement was ever reached or executed.

42. Despite additional letters from undersigned counsel on October 7, 2024 and December 6, 2024, continuing to demand Defendants cease and desist further use of the Derivative Works, the www.pessimistwine.com website continues to feature the Derivative Work, as of this Complaint.

## CLAIMS ALLEGED

### Count 1
**Federal Copyright Infringement – Derivative Works 17 U.S.C. §§106 and 501**

43. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

44. Plaintiff is the sole author of the Work identified in U.S. Copyright Registration Number VA 2-071-409 and the sole owner of the copyright to the Work.

45. That copyright has never been assigned by Plaintiff to any Defendant or any other party.

46. No written license agreement between Plaintiff and any Defendant has been executed.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 8

47. Plaintiff and Defendants have never orally agreed to a set of terms and conditions to govern Defendant's license to the Work.

48. An implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008), *quoting I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996).

49. In this case, Defendant DAOU Vineyards requested Plaintiff to create the Work, Plaintiff created the Work and delivered it to DAOU Vineyards, and Plaintiff intended DAOU Vineyards to copy and distribute the Work on the labels of its "Pessimist" wine bottles.

50. Accordingly, Defendant, DAOU Vineyards had an implied license only to use the Work on the labels of its "Pessimist" wine bottles.

51. The implied license created by the Parties' conduct was non-exclusive, as an exclusive license must be in writing, pursuant to 17 U.S.C. §204.

52. However, "[e]ven if a copyright owner grants an implied license, the licensee may be liable for copyright infringement if he exceeds its scope." *Irwin v. American Interactive Media*, No. 93-1403, 1994 U.S. Dist. LEXIS 16223, at *14 (C.D. Cal. Apr. 14, 1994), *citing MacLean Associates, Inc. v. WM. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3rd Cir. 1991). "A licensee infringes the owner's copyright if its use exceeds the scope of its license. The critical question is not the existence but the scope of the license." *S.O.S., Inc. v. Payday, Inc.*, 886

F.2d 1081, 1088 (9th Cir. 1989), *quoting Gilliam v. American Broadcasting Cos.*, 538 F.2d 14, 20 (2d Cir.1976).  *See also, LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1156 (9th Cir. 2006); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042 (9th Cir. 2020).

53. At the time that DAOU Vineyards requested, and Plaintiff created, the Work, the parties' only discussion of its use was on the label of DAOU Vineyards' "Pessimist" wine bottles.

54. Subsequent to creation of the Work, DAOU Vineyards expressed several times the desire for Plaintiff to create a physical painting and 100 lithographs, based on the Work.  Although the parties never agreed upon terms and the painting and lithographs were not created, these desired items would have been derivative works of the Work.

55. It is clear, therefore, that the right to create derivative works remained with Plaintiff and was never within the scope of DAOU Vineyards' non-exclusive, implied license to the Work.

56. At some time prior to August 20, 2024, one or more Defendants created, or caused to be created, the Derivative Works, without authorization from Plaintiff.

57. The image shown below, which is taken from Exhibit 2,  ("Derivative Work 1") is a screenshot of the www.pessimistwine.com website taken by undersigned counsel on August 21, 2024.



58. Derivative Work 1 includes the image of a wine bottle that contains the original copyrighted Work.

59. In the new image, behind the wine bottle; the tree, the two birds sitting in the tree, the figure sitting under the tree, and the moon behind the tree were all elements of the original Work that were incorporated into Derivative Work 1.

60. The image shown below, which is taken from Exhibit 3 ("Derivative Work 2"), is a screenshot of a DAOU Vineyards sponsored Facebook advertisement taken by undersigned counsel on August 22, 2024.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19

61. In the image, behind the two wine bottles; the tree, the two birds sitting in the
tree, and the moon behind the tree were all elements of the original Work that
were incorporated into Derivative Work 2.

62. A "work based upon one or more preexisting works" that "recast[s], transform[s],
or adapt[s]" the preexisting work is referred to as a "derivative work." *17 U.S.C.
§101*; *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016,
104 U.S.P.Q.2d 1097, 1104 (9th Cir. 2012).

20
21
22
23
24
25
26
27
28

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 12

63. Derivative Works 1 and 2 are derivative works of Plaintiff's original Work under 17 U.S.C. §101.

64. Upon information and belief, Derivative Works 1 and 2 were created by Defendant, John Doe, at the behest of one or more of the other Defendants.

65. Pursuant to 17 U.S.C. §106(2), only the owner of a copyright has the exclusive right to prepare or authorize the preparation of derivative works.  Plaintiff, as owner of the copyright to the Work, did not prepare or authorize the preparation of the Derivative Works.

66. Pursuant to 17 U.S.C. §501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122… is an infringer of the copyright."

67. By preparing, and/or authorizing the preparation of the Derivative Works, Defendants have exceeded the scope of their non-exclusive, implied license and infringed Plaintiff's copyright to the Work.

68. Defendants knew, or should have known, that no written license to the Work was executed by the Parties.

69. Accordingly, Defendants knew or should have known that they were operating under a non-exclusive, implied license to use the Work strictly on the label of its "Pessimist" wine bottles.

70. Defendant's preparation and/or authorization to prepare the Derivative Works was, therefore, willful.

71. Further, as Defendants had actual notice of their infringement through the preparation of the Derivative Works at least as early as undersigned counsel's

August 30, 2024 letter, their continued use of the Derivative Works constitutes willful infringement.

72. Plaintiff is entitled to a permanent injunction, prohibiting Defendants' preparation, authorization to prepare, display, or other use of any and all works derived from Plaintiff's copyrighted Work, pursuant to 17 U.S.C. §502(a), including, but not limited to Derivative Works 1 & 2.

73. Plaintiff is entitled to an award of any and all profits of Defendants that are attributable to their infringement of Plaintiff's copyright, pursuant to 17 U.S.C. §504(b).

74. Alternatively, Plaintiff is entitled to an award of statutory damages pursuant to 17 U.S.C. §504(c) and an enhancement of said damages based upon a finding that the infringement was willful, pursuant to §504(c)(2).

75. Plaintiff is entitled to an award of costs and attorneys' fees, pursuant to 17 U.S.C. §505.

## Count 2
### Federal Copyright Infringement – Assignment of License

76. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

77. As set forth above, Plaintiff and Defendant, DAOU Vineyards entered into a non-exclusive, implied license for use of Plaintiff's copyrighted Work on the labels of its "Pessimist" wine bottles.

78. This implied license was granted by Plaintiff, in part, based upon his personal relationship with George Daou, cofounder and proprietor of DAOU Vineyards.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 14

79. A license to use a copyrighted subject in a particular way, being a privilege personal to the licensee, is not assignable unless it contains words showing that it was intended to be assigned. *Mills Music, Inc. v. Cromwell Music, Inc.*, 126 F.Supp 54, 62 (S.D.N.Y. 1954). A non-exclusive copyright licensee "has no right to re-sell or sub-license the rights acquired unless he has been expressly authorized to do so." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984). "[E]xpress authorization is required to transfer rights under a nonexclusive license." *UMG Recordings, Inc. v. BCD Music Grp*, 2008 WL 11284864, *3 (C.D. Cal. Dec. 8, 2008), *citing Harris*, 734 F.2d at 1333. A copyright licensee is a "bare licensee… without any right to assign its privilege." *Harris*, 734 F.2d at 1333, *quoting Ilyin v. Avon Publications, Inc.*, 144 F.Supp. 368, 372 (S.D.N.Y. 1956). Thus, even in the event of a written, nonexclusive license, the right to assign or sublicense the licensee's rights must be expressly granted. For the Court to imply an unlimited right to sublicense would be inconsistent with Copyright law, because it would allow the licensee to be a competitor in the market to the Copyright owner for licenses and would undermine the owner's retained rights to control the use of his artwork. *Crispin v. Christian Audigier, Inc.*, 839 F.Supp.2d 1086, 1097 (C.D.Cal. 2011).

80. The non-exclusive, implied license granted by Plaintiff in this case was personal to George Daou and his company, DAOU Vineyards.

81. A license is an agreement not to sue the licensee for infringement, it conveys no proprietary rights in the copyright itself. *Harris*, 734 F.2d at 1334.

82. Accordingly, when Treasury Wine Estates purchased DAOU Vineyards on or about October 31, 2023, no interest in Plaintiff's copyrighted work could have transferred to Treasury Wine Estates.

83. Therefore, the implied license granted to DAOU Vineyards was effectively terminated upon acquisition by Treasury Wine Estates.

84. Plaintiff and Treasury Wine Estates have never discussed, much less agreed upon terms of a license to Plaintiff's copyrighted Work.

85. Nevertheless, it is now Treasury Wine Estates, not DAOU Vineyards, that claims to have the right to continued use of Plaintiff's copyrighted Work, as evidenced by the fact that the attorney who responded to undersigned counsel's letters of August 30, 2024 and October 7, 2024 identified himself as "counsel for Treasury Wine Estates," not DAOU Vineyards, and demanded that all further communication on the subject be directed to his attention.

86. No license to the Work has ever been granted by Plaintiff to Treasury Wine Estates.  However, purely for the sake of completeness and unambiguity, Plaintiff sent a letter to Treasury Wine Estates' attorney on February 10, 2025, explicitly rescinding the license to DAOU Vineyards on the basis that DAOU Vineyards had exceeded the scope of the implied license by allegedly transferring its rights to the Work to Treasury Wine Estates, as well as through the creation of derivative works, as set forth above.

87. As Treasury Wine Estates has no license to use Plaintiff's copyrighted Work, its continued use of said work on the labels of its "Pessimist" wine bottles constitutes infringement of Plaintiff's copyright under 17 U.S.C. §501.

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 16

88. Defendants knew that the implied license was not transferrable to Treasury Wine Estates as evidenced by the fact that DAOU Vineyards attempted to negotiate a written license in January 2023, before the acquisition by Treasury Wine Estates, and again a proposed assignment in August 2024.  If the implied license were transferrable, those attempts would have been unnecessary.  Accordingly, Defendants' infringement of Plaintiff's copyright was, and continues to be, willful.

89. Further, Defendants were provided actual notice of the infringement at least as early as August 30, 2024 and were informed in no uncertain terms that the original implied license was terminated on February 10, 2025.

90. Plaintiff is entitled to a permanent injunction, prohibiting Defendant's continued use of Plaintiff's copyrighted Work, pursuant to 17 U.S.C. §502(a).

91. Plaintiff is entitled to an award of any and all profits of Defendants that are attributable to the infringement of Plaintiff's copyright, pursuant to 17 U.S.C. §504(b).

92. Alternatively, Plaintiff is entitled to an award of statutory damages pursuant to 17 U.S.C. §504(c) and an enhancement of said damages based upon a finding that the infringement was willful, pursuant to §504(c)(2).

93. Plaintiff is entitled to an award of costs and attorneys' fees, pursuant to 17 U.S.C. §505.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 17

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Ryan McCann requests that the Court enter an Order as follows:

A.  Granting Plaintiff a permanent injunction requiring Defendants to cease all use of the Derivative Works and prohibiting Defendants' preparation, authorization to prepare, display, or other use of any and all works derived from Plaintiff's copyrighted Work;

B.  Granting Plaintiff a permanent injunction requiring Defendants to cease all use of Plaintiff's copyrighted Work

C.  Awarding Defendants' profits attributable to the infringement of Plaintiff's copyright in the Work, in an amount to be proved at trial;

D.  Finding that Defendants' infringement of Plaintiff's copyright was willful and awarding statutory damages in the maximum amount of $150,000 per infringement;

E.  Awarding Plaintiff all reasonable costs and attorneys' fees associated with this action; and

F.  Such other and further relief that the Court deems reasonable and just.

Dated: February 10, 2025               __/s/ Brian D. Kaider_____
                                       Brian D. Kaider, Esq.
                                       KaiderLaw®
                                       24230 Kings Valley Road
                                       Damascus, MD 20872
                                       Telephone: (240) 308-8032
                                       Email: bkaider@kaiderlaw.com
                                       Attorney for Plaintiff
                                       *Pro Hac Vice* - pending

JURY DEMAND: Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).

Dated: February 10, 2025               __/s/ Brian D. Kaider_____
                                       Brian D. Kaider, Esq.
                                       Attorney for Plaintiff
                                       *Pro Hac Vice* – pending

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kayla Tayle Clappeth*

Acting United States Register of Copyrights and Director

**Registration Number**

**VA 2-071-409**

**Effective Date of Registration:**
May 16, 2017

---

## Title

**Title of Work:** A Pessimist is Never Disappointed.

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** January 01, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Ryan McCann
  **Author Created:** Illustration
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1979

## Copyright Claimant

**Copyright Claimant:** Ryan McCann
2422 W Washington Blvd, Los Angeles, CA, 90018, United States

## Rights and Permissions

**Name:** Ryan McCann
**Email:** rmccann4@gmail.com
**Telephone:** (310)906-0026
**Address:** 2422 W Washington Blvd
Los Angeles, CA 90018 United States

## Certification

**Name:** Ryan McCann
**Date:** May 16, 2017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2



1
2
3
4
5
6
7
8
9
10
11
12
13

EXHIBIT 3

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR COPYRIGHT INFRINGEMENT - 21



